```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
HELAL K. FARAG,

                    Plaintiff,

        - against -                          06 Civ. 2735 (JES)

U.S. CITIZENSHIP AND IMMIGRATION             MEMORANDUM OPINION
SERVICES and DEPARTMENT OF STATE,               & ORDER

                    Defendants.
-----------------------------------X
```
**SPRIZZO, D.J.:**

Plaintiff, Helal K. Farag ("plaintiff" or "Farag"), brings this action against defendants, U.S. Citizenship and Immigration Services ("USCIS") and the Department of State (the "American Embassy at Cairo" or the "Embassy"), for declaratory and mandamus relief involving petitions for derivative asylum for plaintiff's family. Defendants filed a Motion to Dismiss for lack of subject matter jurisdiction and failure to state a claim on which relief can be granted under Fed. R. Civ. P. 12(b)(1) and (6), dated November 20, 2006. Plaintiff filed a Response, dated June 21, 2007. Plaintiff withdrew his request for oral argument by letter dated October 4, 2007. The Government did not oppose that withdrawal. The Court, for the reasons set forth below, hereby grants the Government's Motion to Dismiss.

## BACKGROUND

Plaintiff, a Coptic Orthodox Egyptian, was granted asylum on June 8, 2001. See Am. Compl. ¶ 8.I. On February 11, 2003, plaintiff sent four Aslyee Relative Petitions (Form I-730) (hereinafter "derivative asylum petitions" or "petitions") for his wife, Madlin, and three children, Heba (disabled), Noha, and Abanoub, to the American Embassy at Cairo. See id. On March 19, 2003, plaintiff sent a letter to the Embassy requesting that the four petitions be returned or sent to the

appropriate place for filing–the USCIS office in Nebraska ("Nebraska Service Center"). See id. ¶ 8.II. On March 24, 2003, an employee at the Embassy sent plaintiff a letter stating that he could not process the petitions before they were approved by the INS.[1] See id. ¶ 8.III. Over a year later, in May 2004, plaintiff sent e-mails to the Embassy inquiring about the status of the petitions. See id ¶ 8.IV-V. In June 2004, the Nebraska Service Center sent plaintiff a notice stating that it had received his petitions on June 1, 2004. See id. ¶ 8.VI. Following receipt of this notice, plaintiff faxed a letter to the Nebraska Service Center and sent an e-mail to the Embassy requesting that the date be changed to February 11, 2003, the date the petitions were sent to the Embassy. See id. ¶ 8.VI-VIII. In June 2005, the USCIS denied the petitions because they were filed after the two-year deadline.[2] See id. ¶ 8.IX. This denial specifically noted that "evidence of Mr. Victor Sedhom's communications with the Embassy of the United States in Cairo[] indicate the error in filing the petitions with that office was discovered in sufficient time, such that a duplicate application could have been signed and sent with appropriate duplicate documentation to the Nebraska Service Center" which would have met the two-year deadline. See id., Ex. N. Moreover, it noted that since there is no filing fee, there would be no undue

---

[1] This letter further stated that as soon as the Embassy received the approved petitions from the INS, it would forward paperwork to Mrs. Farag with further instructions. See Am. Compl., Ex. D. Plaintiff argues that "[t]his letter shows that there was no duty on the plaintiff to resubmit other petitions." See Pl.'s Br. in Reply to Defs.' Mot. to Dismiss ("Pl.'s Br.") at 1. He further states that he did not need to submit new applications because he "wisely trusted the U.S. federal government . . . and that was a normal way of dealing with the U.S. government." See Pl.'s Br. at 6.

[2] Derivative asylum petitions must be filed within two years of the date in which the asylee is granted asylum status unless the USCIS determines that the deadline should be extended for humanitarian reasons. See 8 C.F.R. § 208.21(d).

2

hardship in filing these duplicates. See id., Ex. N. It also stated that an "error in filing do[es] not constitute appropriate grounds . . . to extend the filing requirements." See id. On July 10, 2005, plaintiff filed four new petitions which cited his proposed humanitarian reason for extending the deadline.[3] See id. ¶ 8.X. These, too, were denied. See id. ¶ 8.XII.

Plaintiff seeks an order from this Court requiring defendants to change the date of receipt of his derivative asylum petitions to February 11, 2003.

## DISCUSSION

On a motion to dismiss, a court must accept all of the allegations set forth in the complaint as true and must draw all reasonable inferences in favor of the plaintiffs. Rombach v. Chang, 355 F.3d 164, 169 (2d Cir. 2004); Halperin v. eBanker USA.COM, Inc., 295 F.3d 352, 356 (2d Cir. 2002). Dismissal is appropriate only when it is clear that the plaintiffs can prove no set of facts "in support of their claims that would entitle them to relief." Halperin, 295 F.3d at 356.

It should also be noted from the outset that "judicial deference to the Executive Branch is especially appropriate in the immigration context," see INS v. Aguirre-Aguirre, 526 U.S. 415, 425 (1999), and that the "Supreme Court has cautioned against improvidently encroaching on the authority which the [INA] confers on the Attorney

---

[3] Plaintiff's proposed humanitarian reason involved his daughter, Heba, who is disabled and seeks treatment in the United States. If her petition is not approved before her twenty-first birthday, she will be unable to apply for derivative asylum and "would lose her chance to be cured." See Pl.'s Br. at 10; Am. Compl., Ex. O, 2-3.

3

General and his delegates," see Dhine v. Slattery, 3 F.3d 613, 619 (2d Cir. 1993)(internal quotations omitted).[4] The Court acknowledges that though "judicial defer[ence] is not summar[y] or blind defer[ence]," see Pl.'s Br. at 9, some deference to the immigration authorities is nonetheless required.

**A. Subject Matter Jurisdiction**

Plaintiff bears the burden of proving jurisdiction. See Malik v. Meissner, 82 F.3d 560, 562 (2d Cir. 1996). Farag asserts jurisdiction under 28 U.S.C. §§ 1329,[5] 1331, 1361, and 2202. See Am. Compl. ¶ 4.

1. *Title 8, Aliens and Nationality, 8 U.S.C. § 1329*

This section confers jurisdiction on district courts to hear "all causes, civil and criminal, *brought by the United States* that arise under the provisions of this title." See 8 U.S.C. § 1329 (emphasis added). It specifically notes that "[n]othing in this section shall be construed as providing jurisdiction for suits against the United States or its agencies or officers." See id. The Supreme Court has confirmed that this section "clear[ly] . . . applies only to actions brought by the United States." See Reno v. American-Arab Anti-Discrimination Comm., 525 U.S. 471, 477 n.4 (1999). As this suit is brought by Farag against agencies of the United States Government, 8 U.S.C. § 1329 does not provide for jurisdiction in this Court.

---

[4] Plaintiff's citation to Reno v. Flores, 507 U.S. 292, 305 (1993), for the proposition that USCIS's action is not due this deference because it does not satisfy the minimum standard of rationally advancing a legitimate government purpose is inapposite, as he does not challenge the constitutionality of the immigration regulation, but simply seeks alteration of receipt dates on derivative asylum petitions.

[5] Plaintiff's Amended Complaint refers to 28 U.S.C. § 1329, but, as there is no such section in the United States Code, and 8 U.S.C. § 1329 involves district courts' subject matter jurisdiction over immigration matters, the Government notes and the Court agrees that plaintiff meant to refer to the latter. See Gov'ts Mem. of Law in Supp. of its Mot. to Dismiss the Am. Compl. ("Gov'ts Mem.") at 9 n.11.

2. *Federal Question Jurisdiction, 28 U.S.C. § 1331*

Section 1331 provides that federal district courts "shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." See 28 U.S.C. § 1331. An action presents a federal question "where the complaint includes allegations either that [federal law] creates the cause of action or that [federal law] is a necessary element of the claim or that some right or interest will be defeated or sustained by a particular construction" of the Constitution or a federal statute. See Franchi v. Manbeck, 947 F.2d 631, 633 (2d Cir. 1991); Huli v. Way, 393 F. Supp. 2d 266, 271 (S.D.N.Y. 2005). To invoke jurisdiction under this statute, plaintiff must make a claim that arises from an applicable federal statute or constitutional provision. See Huli, 393 F. Supp. 2d at 271. Farag does not specifically allege violation of any other federal statute or constitutional provision in his Amended Complaint. To the extent that he may generally allege a violation of the Immigration and Naturalization Act, that would be insufficient because "that statute does not itself create a cause of action or federally-protected right or interest in derivative asylum status." See id. Several circuits have explicitly noted that federal law does not recognize any right for a U.S. Citizen, or an asylee, to have alien family members present in the United States. See Anetekhai v. INS, 876 F.2d 1218, 1222 n.5 (5th Cir. 1989); Almario v. Attorney General, 872 F.2d 147, 151 (6th Cir. 1989); Burrafato v. U.S. Dep't of State, 523 F.2d 554, 555 (2d Cir. 1975); Silverman v. Rogers, 437 F.2d 102, 107 (1st Cir. 1970); Swartz v. Rogers, 254 F.2d 338 (D.C.

5

Cir. 1958). In fact, plaintiff does not even have a protected interest in his own immigration status. See Azizi v. Thornburgh, 908 F.2d 1130, 1134 (2d Cir. 1990) (holding that an alien undergoing deportation proceedings and alien spouse do not have a constitutionally-protected property right to an immigrant visa); Yilmaz v. McElroy, 2001 U.S. Dist. LEXIS 20839, at *9 (S.D.N.Y. Dec. 17, 2001).

Plaintiff argues that "[c]omplaints may either refer to the appropriate jurisdictional statute or contain factual assertions that, if proved, establish jurisdiction."[6] See Pl.'s Br. at 11. He suggests in his Amended Complaint that Embassy personnel discriminated against him because he is a Christian, resulting in a potential Constitutional violation. See Am. Compl. ¶ 8.XII ("The reason for hiding the original petition until the time expired is that the bearded and veiled Muslim staff in the Consulate was hiding them."), Exs. O & Q ("From my experience in dealing with the Consulate in similar issues, similar incidents occurred with the Coptic Orthodox applicants and petitioners and I have a strong feeling that the record was hidden by some of the bearded and veiled Muslim staffs in the Consulate.").[7] Plaintiff's

---

[6] Plaintiff cites to Malik v. Meissner, 82 F.3d 560, 562 (2d Cir. 1996) for the proposition that a party can demonstrate subject matter jurisdiction by alleging that a consistently applied policy violated the rights of an entire class of claimants. See id. (citing McNary v. Haitian Refugee Ctr., Inc., 498 U.S. 479, 484, 492 (1991)). This case creates an exception to the rule that courts can generally only review orders of exclusion or deportation in denials of Special Agricultural Worker status. See id. Assuming arguendo that this case is not distinguishable by context alone, Malik ultimately holds that plaintiff proffered only "conclusory allegations that his alleged mistreatment was 'consistent with an unlawful and unconstitutional pattern and practice' and failed to allege any facts supporting his claim that the INS generally uses unconstitutional procedures or standards" and affirms dismissal for lack of subject matter jurisdiction. See id. In this respect, this case is indistinguishable.

[7] The remainder of plaintiff's related allegations include the following: "From the above, it is clear that somebody from the Consulate intentionally hid[] the record until the expiration date of filing the petitions [ran]. He is one of the Muslim workers in the Embassy. I

6

suggested inference of discrimination based on his reference to the Embassy employee's erroneous employment advice and to discrimination in the granting of visas, see discussion at fn.7, is based largely on vague and unsubstantiated facts that do not apply to the matter at hand. Therefore, it is clear that this Court does not have jurisdiction under 28 U.S.C. § 1331 as a result of a constitutional violation.

3. *The Mandamus Statute, 28 U.S.C. § 1361*

A federal district court may issue a writ of mandamus under 28 U.S.C. § 1361 to compel fulfillment of obligations only where a federal official has a clear obligation to perform a duty. See Heckler v. Ringer, 466 U.S. 602, 616 (1984). Granting derivative asylum rests entirely within the discretion of the USCIS.[8] See 8 U.S.C. § 1158(b)(3)(A) ("A spouse or child . . . of an alien who is granted

---

think that the Consulate knows very well who was handling the case after [it] was filed in the Consulate on February 11, 2003. I have received several complain[ts] from the Muslim staff of your Consulate. I was representing a Lottery case in about the year of 2000 or 2001. At that time, it was required that the applicant must sign the application by himself. Fawzy AYYAD, in his meeting with a lady called "HODA," described as a lady [who] wears glasses and used to put them on the bottom of her nose. When he went to receive the visa, he noticed that Hoda did not ask the Muslims whether they signed the Lottery applications by themselves or by somebody else. He noticed that she asked this question to Christians only including himself and when he said the truth, she denied the visa. Many other complain[t]s were received from the families in New York that members of their family that . . . Hoda mislead them about the status of America and the possibility to find a Job here and accordingly, she denied the visa [sic]."

See Am. Compl., Ex. Q.

He also attached an article written by Niles Lathem to his Amended Complaint which reports that an investigation has been launched into "whether hard-line Islamic employees at the U.S Embassy in Egypt are working behind the scenes to deny visas to Coptic Christians," that potentially thousands of applicants have wrongly been denied visas, and that these employees have unusual influence over the visa process. See id., Ex. S.

[8] Plaintiff argues that correcting a clerical mistake or a ministerial error is not a clearly discretionary duty. See Pl.'s Br. at 4-5, 12. He cites to Work v. United States, 267 U.S. 175, 177 (1925), which notes that "[m]andamus issues to compel an officer to perform a purely ministerial duty." However, plaintiff cites to no statutory or other duty on the part of USCIS or the Embassy to change the receipt dates on his derivative asylum petitions.

7

asylum under this subsection *may* . . . be granted the same status.") (emphasis added). As the Attorney General is not required to grant asylum to applicants who meet the eligibility standards, he certainly cannot be required to approve applications of those who fail to follow the proper procedures. See INS v. Cardozo-Fonseca, 480 U.S. 421, 443 (1987) ("[A]n alien who satisfies the applicable standard . . . does not have a *right* to remain in the United States; he or she is simply *eligible* for asylum, if the Attorney General, in his discretion, chooses to grant it."). The language conferring the authority to grant asylum on the Attorney General contains similar terms to that conferring the authority to grant derivative asylum. Compare 8 U.S.C. § 1158(b)(1)(A) with 8 U.S.C. § 1158(b)(3)(A). "[M]atters solely within the INS's discretion . . . are not reviewable under . . . 28 U.S.C. § 1361." See Wan Shih Hsieh v. Kiley, 569 F.2d 1179, 1182 (2d Cir. 1978). Since the mandamus statute only applies to clearly non-discretionary duties, this Court does not have jurisdiction under 28 U.S.C. § 1361.

The Embassy does not have a duty to change the dates of receipt of plaintiff's petitions. Even if it did have such a duty, the change would be futile since the USCIS acknowledged the Embassy's earlier receipt of the petitions and proceeded to deny the applications regardless. See Am. Compl., Ex. N.

4. *The Declaratory Judgment Statute, 28 U.S.C. § 2202*

This section provides for relief based on a declaratory judgment or decree. See 28 U.S.C. § 2202. The Second Circuit has clearly held that this statute does not confer jurisdiction on a district court.

8

See Fleet Bank, N. A. v. Burke, 160 F.3d 886 (2d Cir. 1998). Thus, plaintiff cannot assert jurisdiction under 28 U.S.C. § 2202 in this Court.

**B. Failure to State a Claim on Which Relief Can be Granted**

Even if this Court had jurisdiction over this case, plaintiff has failed to state a claim on which relief can be granted. Plaintiff freely admits that he has not complied with the deadline for derivative asylum applications.[9] See Am. Compl. ¶¶ 1, 8. As to his argument that the deadline should be extended for a humanitarian reason, the USCIS denied this request because "[f]ailure . . . to follow important instructions and/or seek assistance . . . does not constitute a waiver of the two years filing deadline." See Am. Compl., Ex. R. This is supported by well-settled law. See Lawrence v. Florida, 127 S.Ct. 1079, 1085 (2007) ("[a]ttorney miscalculation is simply not sufficient to warrant equitable tolling").[10]

In addition to the likely futility of the Embassy changing the receipt date of the applications, there is at least some question regarding the Court's authority to direct the Embassy to do so because Government agencies, particularly United States Embassies, are

---

[9] Plaintiff objects to this characterization, as he claims the applications were timely served on the Consulate. See Pl.'s Br. at 19. However, the plaintiff does not dispute that the applications were not received by the USCIS within the two-year deadline. See Am. Compl. ¶ 1.

[10] This case, like most cases addressing this issue, involves a habeas petition. The Supreme Court, however, makes this statement regarding attorney miscalculation and equitable tolling and only then proceeds further to say that this principle applies "particularly in the post conviction context where prisoners have no constitutional right to counsel." See id.; see also Jurado v. Burt, 337 F.3d 638, 644 (6th Cir. 2003) (habeas case noting that the doctrine of equitable tolling does not grant a right to extended delay when an attorney fails to exercise due diligence); Miranda v. Castro, 292 F.3d 1063, 1066-67 (9th Cir. 2002) (habeas case noting that equitable tolling is appropriate only when extraordinary circumstances make it impossible to file on time); Fahy v. Horn, 240 F.3d 239, 244 (3d Cir. 2001) (habeas case noting that "attorney error, miscalculation, inadequate research, or other mistakes have not been found to rise to the "extraordinary" circumstances required for equitable tolling).

9

against him as a Christian,[11] the Government argues that the Amended Complaint contains no evidence whatsoever supporting this suggestion. See Gov't's Mem. at 16 n.19. The Court agrees. As the Supreme Court noted, plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level" in order to withstand a 12(b)(6) motion. See Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007). Here, plaintiff has pled no facts whatsoever, but has simply alleged some vague, unsubstantiated discrimination against Coptic Orthodox applicants. Furthermore, even if this allegation were supported, the Embassy's alleged hiding of the petitions did not result in their denial. Rather, plaintiff's failure to timely file petitions with the appropriate office caused this end.

## CONCLUSION

For the reasons stated above, the Government's Motion to Dismiss is hereby granted.

**It is SO ORDERED.**

**DATED:** New York, New York
~~December   , 2007~~
1-22-08

_____
John E. Sprizzo
United States District Judge

---

[11] See supra § A.2.

10

**APPEARANCES**

VICTOR B. SEDHOM, ESQ.
Attorney for Plaintiff
875 Avenue of the Americas
Suite 501
New York, NY 10001


MICHAEL J. GARCIA
UNITED STATES ATTORNEY,
SOUTHERN DISTRICT OF NEW YORK
Attorney for Defendants
86 Chambers Street, 4th Floor
New York, NY 10007

    F. JAMES LoPREST, JR.
    SPECIAL ASSISTANT UNITED STATES ATTORNEY

        Of Counsel